IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 22, 2005

## DUSTIN DWAYNE DAVIS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 71411   Ray L. Jenkins, Judge**

_____

**No. E2004-01394-CCA-R3-PC - Filed July 14, 2005**

_____

The petitioner, Dustin Dwayne Davis, was convicted by a jury in 1998 of especially aggravated kidnapping, aggravated robbery, misdemeanor theft and two (2) counts of aggravated rape. As a result, the petitioner was sentenced to a total effective sentence of 100 years in the Tennessee Department of Correction. On direct appeal, this Court affirmed the petitioner's convictions and sentence. See State v. Dustin Dwayne Davis, No. 03C01-9712-CR-00543, 1999 WL 135054 (Tenn. Crim. App., at Knoxville, Mar. 15, 1999), perm. app. denied (Tenn. Oct. 11, 1999). The petitioner subsequently sought post-conviction relief in which he alleged, inter alia, that he received ineffective assistance of counsel at trial. After a hearing, the petition for post-conviction relief was denied. On appeal, the petitioner challenges the post-conviction court's dismissal of the petition for post-conviction relief. Because we determine that the petitioner was afforded the effective assistance of counsel, we affirm the post-conviction court's dismissal of the petition for post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID G. HAYES and JAMES CURWOOD WITT, JR., JJ., joined.

Leslie M. Jeffress, Knoxville, Tennessee, for the appellant, Dustin Dwayne Davis.

Paul G. Summers, Attorney General & Reporter; Seth P. Kestner, Assistant Attorney General; Randall E. Nichols, District Attorney General; Zane Scarlett, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

Factual Background

The facts supporting the petitioner's underlying convictions were summarized by this Court on direct appeal as follows:

In the late evening hours of August 7, 1991 or early morning hours of August 8, 1991, the defendant and another man identified only as "Baby" approached 20-year-old S.W. and her 16-year-old female companion, M.T,[1] outside the Carousel Club in Knoxville. The men asked if they could buy the women a beer, and the women accepted. The group went to the men's vehicle, where the defendant and S.W. got into the front seat and their companions got into the back seat.

The defendant began driving toward Magnolia Avenue, and S.W. inquired why they were not going to Cumberland Avenue. The defendant replied that beer was cheaper on Magnolia.

After the beer was purchased, S.W. told the defendant that she and M.T. needed to go back to the Carousel. The defendant said okay but drove in the opposite direction. He said they were going to his cousin's house. They drove through a housing project area, and the defendant said his cousin was not home.

S.W. again told the defendant she was ready to go back to the Carousel. She asked the defendant where they were going, and he replied that people had been killed and raped in the area but she did not need to worry about that.

The defendant pulled into a dead-end road near a ball park. The defendant asked to see S.W.'s jewelry and inquired about its authenticity. S.W. again asked to go back to the Carousel and said she and M.T. would walk back if necessary. The defendant said, "You won't get anywhere" and took a lead pipe from under the car seat. He threatened to hit S.W. with the pipe. S.W. and M.T. attempted to escape the car, but they were unsuccessful. The defendant hit M.T. on the leg with the pipe.

The defendant pulled S.W. by her long hair to the hood of the car, where he hit her in the face with his fist until she surrendered her diamond ring. The defendant then pulled S.W. up by her hair and then forcibly led her to the ball field. At the top

---

[1]The names of the young women the defendant and his companion victimized are of no consequence to the issue presented in this appeal. Thus, we identify them only by their initials.

of a flight of steps, he demanded her watch. She surrendered it, and he pushed her toward the steps.

The defendant demanded that S.W. perform oral sex on him, and she told him she had a venereal disease in her throat to try to get out of the situation. The defendant forced S.W. to remove her pants, and he forced her down and penetrated her anally. He told her if she moved he would strike her with the lead pipe.

The defendant became angry when S.W. would not perform as he demanded. He yanked her up by her hair and hit her on the leg with the pipe. A car drove by and frightened the defendant, and he made S.W. pick up her clothes and walk over to the dugout. Inside dugout, the defendant forced himself on S.W. vaginally.

While these events were transpiring, the defendant's companion demanded M.T.'s jewelry. He told her that if she did not turn it over, the defendant would take it anyway, and she would rather have him take it than the defendant. The defendant's companion told M.T. to take off her clothes. When she refused, he told her that the defendant would make her do it. However, he took no steps to force her to comply with his demand. M.T. eventually convinced the defendant's companion to yell to check on S.W.

The defendant's sexual assault of S.W. ceased when M.T. began yelling from the area above. The defendant's companion appeared, and the defendant took more jewelry from S.W. after hitting her several times. While this was going on, M.T. flagged down a car. The defendant and his companion fled.

Dustin Dwayne Davis, 1999 WL 135054, at *1-2. At trial, there was also testimony that S.W. had chosen the defendant from a photographic lineup six (6) years earlier, when her memory was fresh. Id. at *4. Further, there was DNA evidence preserved in the rape kit and from aborted fetal tissue collected from S.W. that established with a very high degree of certainty that the defendant had engaged in sexual relations with the victim. Id.

At the conclusion of the trial, the jury found the petitioner guilty of especially aggravated robbery, especially aggravated kidnapping, theft, and two (2) counts of aggravated rape. The trial court sentenced the appellant to twenty-five (25) years for each of the convictions with the exception of the conviction for misdemeanor theft, for which the petitioner received an eleven (11) month, twenty-nine (29) day sentence. The four (4) twenty-five (25) year sentences were ordered to be served consecutively, for a total effective sentence of 100 years. The petitioner appealed his convictions to this Court, arguing that: (1) the trial judge erred in presiding at trial after initially recusing himself; (2) the evidence was insufficient to support the convictions; (3) he was denied a fair trial by the trial court's admission of evidence of the victim's pregnancy and subsequent abortion; (4) the trial court erred in denying his motion for judgment of acquittal on the especially aggravated kidnapping count and two (2) of the three (3) aggravated kidnapping counts; and (5) the

trial court erred in sentencing him to an effective 100 year sentence. This Court affirmed the petitioner's convictions and sentence. Dustin Dwayne Davis, 1999 WL 1335054, at *13. The petitioner filed an application for permission to appeal which was denied by the Tennessee Supreme Court on October 11, 1999.

Subsequently, the petitioner filed a timely petition for post-conviction relief, alleging: (1) that his sentence violates the Eighth Amendment and was ordered in violation of Tennessee Code Annotated section 40-35-114; (2) the trial court erred by presiding at trial after initially recusing himself, violating the petitioner's rights under the Tennessee Constitution and the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; (3) the petitioner's conviction for five (5) separate offenses "resulting from a singular criminal episode violated his federal and state constitutional rights;" and (4) trial counsel was ineffective.

Evidence at the Post-Conviction Hearing

The trial court held a hearing on the post-conviction petition on March 11, 2004. At the hearing, the petitioner testified that trial counsel met with him "maybe twice" prior to his trial and that he did not get a chance to explain his side of the story to trial counsel because their time together was "brief." However, the petitioner claimed that he repeatedly told trial counsel that the encounter was consensual and asked her to pursue consent as a defense to the charges. The petitioner was dissatisfied with trial counsel's representation because he did not feel that she adequately raised the defense of consent. Further, the petitioner claimed that trial counsel did not inform him that he had an absolute right to testify. The petitioner stated that he would have taken the stand in his own defense if he knew that he had the right to testify. However, the petitioner later conceded that he voluntarily made the choice not to testify at trial. The petitioner also claimed that trial counsel wrote a letter to him in which she claimed that the petitioner would "reveal himself to be the stupidest defendant whom she had ever met" if he testified during a trial of a totally unrelated matter. The petitioner also claimed that trial counsel told him it would be "stupid" to testify at trial. The petitioner recalled meeting with the investigator assigned to the case approximately two (2) times but could not recall if the investigator was present during his meetings with trial counsel.

Trial counsel testified that she had been practicing law since 1991 and devoted the majority of her practice to criminal law. Trial counsel recalled meeting with the petitioner at least four (4) times prior to trial. Trial counsel also claimed that she met with the petitioner's family and "made an effort to interview all of the witnesses" even though she had less than adequate cooperation from the victim and her friend. Trial counsel remembered that, at one point, the State offered a plea agreement that would have resulted in the petitioner receiving a twenty-seven (27) year sentence at thirty-five percent (35%) and that she recommended to the petitioner that he take the deal. Trial counsel also specifically remembered going over a form which enumerated the petitioner's right to testify, the strength of the State's case, possible penalties, the plea offer, and evidence of other crimes that would be admissible at trial if the petitioner chose to testify. Trial counsel testified that the petitioner refused to sign the form. The form itself was admitted into evidence. The form was signed on July 30, 1997 by trial counsel and the investigator and indicates that the form was "read

to and explained" to the petitioner, but that he "refused to sign" the form. Trial counsel claimed that she advised the petitioner not to testify but left the ultimate decision up to the petitioner. Trial counsel also explained that she attempted to introduce evidence that the encounter was consensual by trying to "elicit - - or . . . impeach in some way [the victim and her friend] to show that these women did consensually go with the defendant and this other person . . . ." Trial counsel also testified that she raised the issue of consent with the State's expert witness on the DNA and paternity evidence by asking if the issue of paternity would have any bearing on whether the victim consented to sexual relations with the petitioner.

At the conclusion of the hearing, the post-conviction court took the matter under advisement. In an order entered April 12, 2004, the trial court dismissed the petition for post-conviction relief. In so doing, the trial court made the following findings of fact and conclusions of law:

> The defendant has filed for relief under the Post Conviction Act. The defendant was represented by a retained attorney and thus none was appointed. Several grounds of relief were urged, however it was noted that most were included so as not to invoke the waiver doctrine. These had been decided previously by the Court of Criminal Appeals. The sole ground remaining was an allegation of ineffective assistance of counsel.

> The petition was set for hearing and the following was heard.

> The defendant testified his attorney had met with him only two times before trial. On cross examination he admitted he had been represented by four attorneys. His testimony was hesitant and his memory selective. His appointed counsel, . . . , said that she met at least four times with the defendant, interviewed all witnesses that would talk with her, obtained an offer from the State, which was rejected by the defendant, and she prepared for trial. She further testified that nothing could have been done for Petitioner that had not been done.

> (As an aside, it was proven that the defendant/petitioner was represented by this same attorney in a later case which she won).

> The attorney testified clearly and succinctly. The Court credits [trial counsel's] testimony. Further, Code Section 40-30-110(f) requires the defendant to prove the allegations by clear and convincing evidence. In the opinion of the Court, the level of preponderance of evidence was not ever reached much less the level required by the statute.

> In the opinion of the Court, [trial counsel's] representation went beyond that level of assistance required by Baxter v. Rose, 523 S.W.2d 930 and Strickland v. Washington, 105 S. Ct. 2052. The Motion of the petitioner for Post Conviction relief is DISMISSED.

-5-

The petitioner filed a timely notice of appeal. On appeal, the petitioner challenges the trial court's dismissal of the petition for post-conviction relief.

Analysis

Post-Conviction Standard of Review

To sustain a petition for post-conviction relief, a defendant must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issue raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the post-conviction court's findings unless the evidence in the record preponderates against those findings. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. See State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). All questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578-79. However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

Ineffective Assistance of Counsel

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. See Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley, 960 S.W.2d at 580.

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. See id. at 578. However, our supreme court has "determined that issues

-6-

of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. See Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. See id. However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. See Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

On appeal, the petitioner argues that trial counsel was ineffective for the following reasons: (1) trial counsel failed to adequately investigate the facts and prepare for trial; (2) trial counsel failed to effectively raise the defense of consent; and (3) trial counsel's written statement indicating that if the petitioner testified he would be the "stupidest client . . . unconstitutionally chilled the exercise of [the petitioner's] right to testify at trial." The State argues that the post-conviction court properly dismissed the petition because the petitioner "presented no credible evidence that establishes that he was either prejudiced by trial counsel's representation or that her representation was deficient in any way."

### A. Investigation of the Case

Initially, the petitioner claims that trial counsel was ineffective for failing to adequately investigate the facts and interview witnesses. However, the petitioner concedes in his brief that "given the largely unrebutted testimony provided at the post-conviction hearing regarding counsel's fact investigation, it cannot honestly be argued that these activities amounted to ineffective representation." Accordingly, this issue is without merit.

### B. Defense of Consent

The petitioner also complains that trial counsel failed to adequately raise the defense of consent. The transcript of the trial reveals that trial counsel raised the issue of consent on at least two (2) occasions. At the post-conviction hearing, trial counsel testified that she raised the issue of consent by attempting to elicit testimony from the victim and her friend on cross-examination that the encounter began as consensual. Further, trial counsel recalled asking the expert if the results of the paternity or DNA testing would in any way indicate whether the encounter was consensual. Trial counsel also testified that it was a "tactical" decision to try to draw out the issue of consent on cross-examination.

In denying the petition, the post-conviction court gave credibility to the testimony of trial counsel. As stated above, "questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the

trier of fact" and the post-conviction court's credibility determinations are conclusive on appeal unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The evidence does not preponderate against the post-conviction court's credibility determination herein. The petitioner has failed to prove by clear and convincing evidence that trial counsel was ineffective in raising the issue of consent. This issue is without merit.

### C. Petitioner's Right to Testify

Finally, the petitioner claims that trial counsel denied him the opportunity to testify on his own behalf at trial. When questioned at the post-conviction hearing, the petitioner claimed that trial counsel told him he would be "stupid" if he chose to testify. Trial counsel admitted to the statement but stated that she left the ultimate decision about the testimony to the petitioner. Trial counsel also produced a form that she recalled reviewing with the petitioner in which she detailed his right to testify. On cross-examination, the petitioner admitted that he had the ultimate choice on whether he would testify and that he voluntarily chose not to testify.

Again, the post-conviction court gave credibility to the testimony of trial counsel. Further, the petitioner admitted that the ultimate decision of whether he would testify was left up to him and that he chose not to testify. The evidence does not preponderate against the post-conviction court's credibility determination herein. The petitioner has failed to prove by clear and convincing evidence that trial counsel was ineffective in thwarting his ability to testify on his own behalf. This issue is without merit.[2]

### Conclusion

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
JERRY L. SMITH, JUDGE

---

[2] We note that the petitioner's trial occurred in 1998, prior to the release of the decision in Momon v. State, 18 S.W.3d 152 (Tenn. 1999), which requires a colloquy on the record by the defendant regarding his right not to testify.